Daniel R. Foster (SBN 179753)
dfoster@mwe.com
Christopher D. Bright (SBN 206273)
cbright@mwe.com
MCDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Telephone: (949) 851-0633
Facsimile: (949) 851-9348

Attorneys for Defendant and Counterclaimant
INFINEON TECHNOLOGIES NORTH
AMERICA CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGORY BENDER,<br><br>    Plaintiff,<br><br>v.<br><br>INFINEON TECHNOLOGIES NORTH AMERICA CORP., a Delaware corporation, et al.,<br><br>    Defendant and Counterclaimant. | Case No. C 09-02112 JW<br><br>**INFINEON TECHNOLOGIES NORTH AMERICA CORP.'S NOTICE OF MOTION AND MOTION TO STRIKE BENDER'S INFRINGEMENT CONTENTIONS OR TO COMPEL INFRINGEMENT CONTENTIONS THAT COMPLY WITH PATENT L.R. 3-1**<br><br>**DISCOVERY MATTER**<br><br>Date:      Tuesday, March 16, 2010<br>Time:      10:00 a.m.<br>Courtroom: 2, 5th Floor<br>Judge:     Hon. Howard R. Lloyd |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................2

II. FACTUAL BACKGROUND ..........................................................................................3

III. ARGUMENT ....................................................................................................................6

    A. Bender's Infringement Contentions Do Not Comply with Patent L.R ...................6

        1. Bender's Claim Charts Are Completely Deficient .......................................6

        2. Bender's "Representative" Products Do Not Represent All of the Accused Infineon Products ........................................................................10

    B. Infineon Will Be Prejudiced if Bender Is Not Compelled to Provide Adequate Infringement Contentions ......................................................................11

    C. Bender Cannot Show the Good Cause Necessary to Amend His Infringement Contentions ......................................................................................12

IV. CONCLUSION ...............................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*02 Micro, Int'l Ltd. v. Monolithic Power Sys.*,
    467 F.3d 1355 (Fed. Cir. 2006)..................................................................................................8

*Alberta Telecomm. Research Ctr. v. Rambus, Inc.*,
    2007 WL. 4170564 (N.D. Cal. Nov. 19, 2007)...........................................................................8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).................................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................6, 12

*Computer Acceleration Corp. v. Microsoft Corp.*,
    503 F. Supp. 2d 819 (E.D. Tex. 2007)......................................................................................10

*Connectel, LLC v. Cisco Sys., Inc.*,
    391 F. Supp. 2d 526 (E.D. Tex. 2005).........................................................................7, 8, 9, 12

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
    2009 U.S. Dist. LEXIS 1644 (E.D. Tex. Jan. 12, 2009).........................................................8, 9

*Intertrust Techs. Corp. v. Microsoft Corp.*,
    2003 U.S. Dist. LEXIS 22736 (N.D. Cal. Nov. 26, 2003)....................................7, 8, 11, 12

*Micromesh Tech. Corp. v. Am. Recreation Prods. Inc.*,
    2007 U.S. Dist. LEXIS 64241 (N.D. Cal. Aug. 29, 2007)......................................................6, 7

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
    2004 U.S. Dist. LEXIS 23601 (N.D. Cal. Nov. 10, 2004).......................................................7, 8

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)......................................................................................................6

## RULES

Patent L.R. 3-1 .............................................................................................2, 7, 8, 9, 11, 12, 13

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, March 16, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Court, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 2, 5th floor, Defendant Infineon Technologies North America Corp. ("Infineon"), pursuant to Civil L.R. 1-4, 7-1, 7-2, Fed. R. Civ. P. 37(a), and Patent L.R. 1-2 and 3-1, will move the Court for an order striking Plaintiff Gregory Bender's ("Bender") infringement contentions or compelling Bender to serve infringement contentions that comply with Patent L.R. 3-1.

This motion is based on the Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein, and on the Declaration of Daniel R. Foster, the [Proposed] Order filed herewith, all of the files and records of this action, and any additional material that may be elicited at the hearing on this Motion.

# RELIEF REQUESTED

1. Infineon seeks an order striking Bender's infringement contentions; OR

2. Infineon seeks an order (a) compelling Bender to serve claim charts specifically identifying where within each of the accused Infineon products the claimed electrical circuit is allegedly located, *i.e.*, which specific circuit components within each accused Infineon product allegedly correspond to the limitations of the asserted claims and how those circuit components are interconnected to form the claimed combination; and (b) compelling Bender to provide representative claim charts for every accused Infineon product that functions differently or is designed differently than Bender's five "representative" products and to demonstrate that the "representative" products are in fact accurate representations of all the accused Infineon products.

# ISSUES TO BE DECIDED

1. Whether Bender's infringement contentions comply with Patent L.R. 3-1; and

2. Whether Bender can show good cause to amend his infringement contentions or whether Bender's infringement contentions should be stricken.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Bender's Patent L.R. 3-1 infringement contentions are devoid of information that articulates with specificity Bender's theory of infringement and thus fail to comply with Rule 3-1. First, the contentions fail to "identify[] specifically where each limitation of each asserted claim is found within each Accused Instrumentality," as the Rule requires. Instead, Bender cites to five "representative" Infineon products and merely speculates that structures corresponding to each claim limitation are located somewhere within these products. Second, Bender does not even attempt to explain how or why these five allegedly "representative" products are representative of all of the accused Infineon products.

Bender's infringement contentions fail to set forth his theory of infringement, and thus the only ascertainable theory upon which Bender's infringement contentions can be based is that (1) he owns a patent claiming a specific type of amplifier structure, (2) he claims that the accused Infineon products contain amplifiers, and (3) the accused Infineon products must therefore contain the specific amplifier structure claimed in his patent. But Bender did not invent all amplifiers, and he did not even invent all "buffered transconductance amplifiers," which he knows based on the cancellation of more than half of his patent claims during reexamination. Bender's infringement contentions are akin to an inventor, having patented a particular type of hybrid 4-cylinder engine, pointing at every car on the road and claiming, "It must infringe," without ever looking under the hood, let alone looking at the engine itself to see if it is a hybrid 4-cylinder engine, and if it is a hybrid 4-cylinder engine, to see if it uses the claimed components in the manner claimed by the inventor. Rule 3-1 simply requires a greater level of investigation and specificity.

Bender served non-compliant infringement contentions on Infineon, made minor amendments to his original claim charts, and has since failed to amend his contentions to comply with Rule 3-1, even though Bender received notice and has full knowledge that the contentions do not comply with Patent L.R. 3-1. First, Infineon has met and conferred with Bender to explain and discuss the numerous deficiencies of Bender's infringement contentions. (*See* Foster Decl. ¶¶

18-24.) Second, Bender has filed 23 other cases in the Northern District of California asserting U.S. Patent No. 5,103,188 (the "'188 Patent") in each case, and parties in seven cases have already filed motions to strike or to compel infringement contentions that comply with Patent L.R. 3-1. (*See* Exhs. A-G.)[1] While some of the motions have been resolved through various stipulations, courts in four of those cases have already ordered Bender to provide more specific infringement contentions. (*See* Exhs. A, B, C, and D.) One court recently warned Bender that "[g]iven these prior rulings [in related cases], plaintiff has now been put on repeated notice that the initial infringement contentions filed with defendant were deficient." (*See* Exh. D at 5.) Moreover, at least one other Court has admonished Plaintiff on his apparent lack of due diligence, stating that Plaintiff "should have hired legions of people to go out and reverse engineer these things. And it's his own problem if he doesn't know why it's infringement." (Exh. H at 15.)

Given Bender's history of non-compliance with Patent L.R. 3-1, both in other cases an in this case, Infineon moves to strike Bender's infringement contentions. In the alternative, Infineon moves to compel: (1) meaningful claim charts that comply with Patent L.R. 3-1; and (2) representative claim charts for all of the accused Infineon products with an explanation of which accused Infineon products are supposedly represented by each "representative" product and how and why the allegedly "representative" Infineon products are representative of those products.

## II.  FACTUAL BACKGROUND

Bender alleges that Infineon infringes claims 8 and 35 of the '188 Patent. The '188 Patent has been reexamined by the United States Patent Office, resulting in the cancellation of over half of its claims. (Exh. I.) For example, the USPTO cancelled claim 1, which claimed "an electrical circuit for amplifying complex or high speed complex signals," deeming it unpatentable in light of the prior art. (*See* Exh. J at 15:49-50; Exh. I.) The surviving claims, including asserted claims 8 and 35, are also directed to electrical circuits for amplifying complex or high speed signals, but they recite more specific amplifier structures than the cancelled claims. (*See generally* Exhs. I and J.)

---

[1] Exhibits A through P are exhibits to the Declaration of Daniel R. Foster in Support of Infineon Technologies North America Corp.'s Motion to Strike Bender's Infringement Contentions or Compel Infringement Contentions that Comply with Patent L.R. 3-1.

INFINEON'S MOTION TO STRIKE OR TO COMPEL INFRINGEMENT CONTENTIONS - 3 - CASE NO. C09 02112 JW

1  Circuits generally include electrical components such as transistors, capacitors, and
2  resistors. The number of components in a circuit or product can be very high. For example,
3  Infineon's products are extremely sophisticated semiconductor chips, containing millions of
4  transistors. The components in a circuit may be interconnected to form more complex
5  components to create circuits such as amplifiers. Circuits can be either analog circuits or digital
6  circuits, but the specific structures claimed in claims 8 and 35 of the '188 Patent are only found in
7  analog circuits. Some of Infineon's products, however, do not have any analog amplifiers in
8  them at all. For example, Infineon's SAB9805 product, which Bender uses as one of his five
9  "representative" products, does not contain any analog amplifiers.

10  On December 28, 2009, Bender served infringement contentions on Infineon pursuant to
11  Patent L.R. 3-1. (Exh. K.) Bender's infringement contentions included five allegedly
12  "representative" claim charts, which he slightly modified on February 7, 2010. (*See* Foster Decl.
13  ¶ 22; Exh. L.) The amendments merely consisted of adding language parroting the asserted claim
14  elements. (*See* Foster Decl. ¶ 23.) These claim charts are completely deficient for at least the
15  following reasons:

- Bender's claim charts include nearly identical text for each claim limitation. Bender cut and pasted the exact same text over and over again for every limitation of each asserted claim. The only difference from element to element is that Bender parrots a portion of the claim language from the particular element at issue. (*See* Exh. L.) For example, for the first element of claim 35, Bender lists 16 "locations," the first of which is "This element is the input buffer circuitry located in the 2100 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product." (*See* Exh. L at 2-3.) For the second element, Bender lists the same 16 "locations," and simply changes a few words, which he parrots from the claim language itself: "This element is the current rail traversing through the input buffering circuitry located in the 2100 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product." Bender repeats this same pattern for each "location" and for each "representative" product.

- The claim charts do not identify specific circuitry or components that allegedly correspond to the claim limitations. Instead, the claim charts rely on vague statements such as: "This element is the first and second input buffers located in the multiple analog input paths which are converted to digital for use by the microprocessor. The analog input circuitry is contained on the integrated circuit contained in the product." (Exh. L at 102.) These statements do not explain ***where*** in the signal path the circuit is located or ***which*** components (*e.g.*, transistors) comprise the circuit. (*See, e.g.*, Exh. L at 102.)

Bender also groups the 600 or more accused Infineon products – spanning across different technologies and applications and implicating many different custodians in numerous locations – into eight categories, some of which are listed in Bender's list of "Infineon Accused Instrumentalities," some of which are not. (Exh. L at 1; Exh. M.) However, Bender asserts that all accused Infineon products in all eight categories are represented by his five "representative" claim charts. (*See* Exh. L at 1.) Bender's product groupings are deficient, and his five claim charts are not representative, for at least the following reasons:

- Bender provides no basis for grouping the products into these eight categories and no rationale for choosing his five "representative" products.

- In addition to the listed products, Bender's infringement contentions accuse "all versions of all of Defendant's products made, used, offered for sale, or sold in, or imported into, the United States since May 14, 2003, which contain either one or more voltage or voltage feedback analog amplifiers built without using a differential pair, or one or more current feedback amplifiers which use more than one set of dual opposing current mirrors, such as products which contain a DAC, ADC, PLL, or otherwise perform tasks for which such high speed analog amplifiers are used." (Exh. K at 3.) This statement is utterly overbroad and cannot possibly be mapped in a claim chart, let alone in one of the five "representative" claim charts.

On January 27, 2010, the parties met and conferred on the issues presented in this motion. (*See* Foster Decl. ¶ 18.) At the conclusion of the meet and confer, Bender's counsel stated that they would let Infineon know if Bender intended to supplement or amend his infringement contentions in light of the parties' discussion. (*See* Foster Decl. ¶ 18.) On February 2, 2010, Infineon's counsel sent an email to Bender's counsel asking if Bender planned to supplement or amend his infringement contentions and, if so, when Infineon could expect such supplementation. (*See* Foster Decl. ¶ 19.) On February 3, Bender's counsel replied, stating that he was "assembling data and information." (*See* Foster Decl. ¶ 20.) On February 7, 2010, Infineon's counsel sent an email to Bender's counsel stating that Infineon had still not received any information in response to the parties' January 27, 2010 meet and confer. (*See* Foster Decl. ¶ 21.) Later that day, Bender's counsel emailed Infineon infringement claim charts containing only immaterial changes as described above, two articles from National Semiconductor, and a document describing an

INFINEON'S MOTION TO STRIKE OR TO COMPEL INFRINGEMENT CONTENTIONS - 5 - CASE NO. C09 02112 JW

1 Intersil amplifier. (*See* Foster Decl. ¶ 22.) This was the whole extent of Bender's amended
2 contentions in this case. (*See* Foster Decl. ¶¶ 22-24.)

## III. ARGUMENT

In the past two years, the Supreme Court has significantly increased the level of specificity required to be plead by a plaintiff in Federal Court before the case is allowed to proceed. A plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In requiring sufficient specificity to reach this plausibility standard, the Supreme Court has emphasized that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129 S. Ct. at 1954. The Federal Circuit has long recognized that a "patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs . . . ." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Judge Patel put it best, stating that the rules requiring a plaintiff to perform significant, early due diligence exist to prevent a "windfall for plaintiffs . . . who file ill-advised and poorly researched actions hoping to extract nuisance settlements before the myriad defects in their allegations can be fully explored. The court will not sanction such an approach." *Micromesh Tech. Corp. v. Am. Recreation Prods. Inc.*, 2007 U.S. Dist. LEXIS 64241, at *21 (N.D. Cal. Aug. 29, 2007). In this case, Bender's failure to perform the required due diligence threatens to cause a "massive factual" inquiry to unjustifiably proceed.

### A. Bender's Infringement Contentions Do Not Comply with Patent L.R. 3-1

#### 1. Bender's Claim Charts Are Completely Deficient

The Patent Local Rules require Bender to provide specific details in his disclosure of his infringement theories. By its very language, Patent L.R. 3-1(c) requires infringement contentions that "identify[] specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c). "The overriding principle of the Patent Local

INFINEON'S MOTION TO STRIKE OR TO COMPEL INFRINGEMENT CONTENTIONS - 6 - CASE NO. C09 02112 JW

1  Rules is that they are designed [to] make the parties more efficient, to streamline the litigation
2  process, and to articulate with specificity the claims and theory of a plaintiff's infringement
3  claims." *Intertrust Techs. Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 22736, at *6 (N.D.
4  Cal. Nov. 26, 2003). The specificity required by Patent L.R. 3-1(c) requires that the infringement
5  contentions do more than simply state that the product infringes; they must specify where in the
6  product each limitation is located. *Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2004 U.S. Dist.
7  LEXIS 23601, at *17 (N.D. Cal. Nov. 10, 2004). Local Rule 3-1 "require[s] a plaintiff to
8  crystallize its theory of the case and patent claims." *Intertrust*, 2003 U.S. Dist. LEXIS 22736, at
9  *4. Interpreting a similar local rule, the Eastern District of Texas noted that Rule 3-1 is designed
10 to prevent "the case stagger[ing] for months without clear direction," by forcing the case to
11 "take[] a clear path, focusing discovery on building precise final infringement or invalidity
12 contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond."
13 *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005).
14   Bender's infringement contentions do not, however, crystallize his infringement positions,
15 nor focus discovery whatsoever. A "one-size-fits-all generic chart that fails to analyze the alleged
16 product" is not sufficient. *Cf. Micromesh Tech. Corp.*, 2007 U.S. Dist. LEXIS 64241, at *15-16
17 (N.D. Cal. Aug. 30, 2007) (citation omitted) (finding similarity of claim charts among separate
18 actions to be strong evidence of bad faith litigation, as "[c]ourts have held that claim charts
19 designed to 'fill in the blank for each new case' are 'essentially worthless'"). But that is exactly
20 what Bender has done. Bender provides generic allegations that he repeats eight times for each
21 asserted claim per accused "representative" product. (*See* Exh. L.) For example, Bender's
22 contentions for the Infineon PMB5701 product consist of a list of sixteen possible "locations," cut
23 and pasted eight times for claim 8 and eight more times for claim 35. (*See* Exh. L at 2-39.)
24 Bender's contentions for the PMB5701 are exactly the same for every element of claims 8 and 35,
25 with the exception that Bender parrots a different portion of claim language identifying the claim
26 element (*e.g.,* "the input buffer circuitry") for the specific element at issue. Bender uses this cut
27 and paste approach despite the recitation of different structures in the claims. (Exh. L at 2-39.)
28 Bender does the same cut and paste for the Infineon TUS9090 (cutting and pasting a list of 9

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

1  possible "locations" 16 times), the Infineon PMB6271 (cutting and pasting a list of 9 possible
2  "locations" 16 times), the SAB9805 (cutting and pasting a list of 5 possible "locations" 16 times),
3  and the XC164SM-4F20F (cutting and pasting "This element is . . . located in the multiple analog
4  input paths which are converted to digital for use by the microprocessor. The analog input
5  circuitry is contained on the integrated circuit contained in the product." 16 times). (*See* Exh. L.)
6  Bender's infringement contentions as a whole, which provide no more detail than his claim
7  charts, are clearly insufficient under Rule 3-1, as they do not "articulate with specificity the
8  claims and theory" of Bender's infringement contentions. *Intertrust*, 2003 U.S. Dist. LEXIS
9  22736, at *6.

10  Not only does Bender cut and paste instead of providing a meaningful infringement
11  analysis, but also the terms that Bender cut and pasted are generic and too vague to be helpful.
12  Bender's "locations" do not satisfy Rule 3-1, which requires that a Plaintiff give the ***specific***
13  locations of infringing components. *See* Patent L.R. 3-1(c); *see also 02 Micro, Int'l Ltd. v.
14  Monolithic Power Sys.*, 467 F.3d 1355, 1362-63 (Fed. Cir. 2006) (stating that plaintiff must
15  provide location of each element of each asserted claim); *Alberta Telecomm. Research Ctr. v.
16  Rambus, Inc.*, 2007 WL 4170564, at *1 (N.D. Cal. Nov. 19, 2007) (compelling plaintiff to amend
17  preliminary infringement contentions to provide location of specific claim elements); *Renesas*,
18  2004 U.S. Dist. LEXIS 23601, at *18-19 (same). Bender's strategy apparently consists of making
19  a list of common semiconductor chip components and hoping that if he names enough
20  components, he will find at least one that is contained in the Infineon product in question. These
21  are exactly the kind of "shotgun accusations" that Rule 3-1 was designed to avoid. *See
22  Connectel*, 391 F. Supp. 2d at 528.

23  Even where Bender has identified a block that exists in an Infineon product, Bender fails
24  to map the claim language to the accused Infineon products. Infringement contentions must
25  "explain" how the "accused infringing products read on the asserted claim language." *Id.*; *see
26  also Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *16 (E.D. Tex.
27  Jan. 12, 2009) (finding charts insufficient where charts did "little more than parrot the claim
28

1 language"). In *Connectel*, Plaintiff alleged infringement of over 100 products based on four
2 charts "broken into the generic categories of routers, switches, gateways/other products, and
3 Cisco IOS software." 391 F. Supp. 2d at 527. The defendant argued that the claim charts
4 "simply mimic[ked] the claim language of the patents-at-issue, rather than explaining how the
5 accused products infringe the patents-at-issue." *Id.* at 528. The court ordered plaintiff to amend
6 its contentions, as "[q]uite simply, [Plaintiff] needs to provide much greater detail in order to
7 comply with Patent Rule 3-1." *Id.*

8 Bender's accusations provide no explanation as to how the infringing products correspond
9 to the claim language. The asserted claims have numerous limitations, including "a first and
10 second input buffer," a "first current rail," a "second current rail," a "load resistor," a "pair of
11 opposing current mirrors," and "dual opposing voltage supply rails." (Exh. J at 16:34-64, 20:39-
12 21:35.) Bender's claim charts, however, do not indicate, for example, which components (*e.g.*,
13 transistors) in the "2100 MHz receiver input" allegedly correspond to the "first input buffer," nor
14 do the claim charts indicate which components form the required "pair of opposing current
15 mirrors." (*See id.*) In fact, Bender's claim charts do not indicate which components correspond
16 to *any* of the accused claim elements. Having failed to identify specific components
17 corresponding to the accused claim elements, Bender necessarily fails to explain how such
18 components are interconnected to form the claimed electrical circuit. In what Infineon can only
19 assume was an attempt to provide such an explanation, along with his amended claim charts,
20 Bender provided two articles by National Semiconductor. (*See* Exhs. O and P.) However, these
21 articles only explain National Semiconductor's understanding of such amplifiers; they say
22 nothing about Infineon's accused products, how components in Infineon's accused products are
23 interconnected, or what Bender's infringement theory is. As in *Connectel*, Bender needs to
24 provide much greater detail to comply with Rule 3-1. *See* 391 F. Supp. 2d at 528.

25 In fact, Bender's contentions and amended claim charts not only fail to crystallize his
26 infringement positions and theory, but they also affirmatively obscure his positions and theory.
27 For example, Bender's amended claim charts state that the circuit claimed in claim 35 is an "Op
28 Amp" despite the fact that Bender explicitly stated during the prosecution of the '188 Patent that

INFINEON'S MOTION TO STRIKE OR TO COMPEL - 9 - CASE NO. C09 02112 JW
INFRINGEMENT CONTENTIONS

"no operational amplifiers exist" in "the present invention" and that "the present invention seeks to eliminate both differential pairs and operational amplifiers from any amplified signal chain . . . ." (*Compare* Exh. L at 20, 50, 74, 94, 104; *with* Exh. N at 42:11-15, 42:24-28, 42:34-36, 43:33-34.) Moreover, Bender stated that he "finds no conflict, commonality, or relevance to the circuits which imply and/or contain either differential pairs and/or operational amplifiers." (Exh. N at 42:45-47.) In light of Bender's statements in the file history of the '188 Patent, his infringement contentions only create confusion as to what Bender actually views as his invention and what, if anything, allegedly infringes the asserted claims.

### 2. Bender's "Representative" Products Do Not Represent All of the Accused Infineon Products

Bender provides Infineon with absolutely no guidance regarding which products allegedly infringe or how they allegedly infringe. First, Bender's infringement contentions list virtually all of Infineon's products, while including claim charts for a mere five products. (*See* Exhs. L and M.) Second, Bender provides no basis or explanation for why he believes that his five "representative" products are in fact representative of the more than 600 accused Infineon products. Where there are differences between products, grouping is not appropriate. *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 823, 825 (E.D. Tex. 2007) (striking infringement contentions for product where plaintiff admitted that new version of technology did seventy percent of what claim chart for related product disclosed, and where plaintiff only provided claim chart for related product). Bender, however, never indicates or explains how certain of the hundreds of accused Infineon products are allegedly similar in design or construction such that a single accused Infineon product can fairly represent an entire group of products. In fact, one of the five "representative" products – the SAB9805 – does not even contain an analog amplifier.

Recently, Judge Illston ordered Bender to "significantly improve[]" his infringement contentions by "provid[ing] defendant specific locations that identify where the alleged infringement occurs, and (2) demonstrate[ing] that the [five] 'representative' products are in fact accurate representations of the other 205 allegedly infringing products." (*See* Exh. D at 4-5.) The

case is even more dramatic here, where Bender has provided five "representative" products for not only 205 allegedly infringing products as was the case in *Micrel*, but rather for ***over 600*** allegedly infringing Infineon products.

Bender's product groups are also impermissibly broad. Rule 3-1 requires a plaintiff to specifically identify all allegedly infringing products. Patent L.R. 3-1(b). To comply with Rule 3-1(b), Bender must identify details such as a product's name, model number, and version number. *See Intertrust*, 2003 U.S. Dist. LEXIS 22736, at *5-6 (requiring plaintiff to identify name and version number of infringing products). Bender lists certain types of products without identifying the specific products he is accusing of infringement. As just one example, Bender lists "Stationary – MOPLL & Silicon Tuner" in his list of Infineon Accused Instrumentalities. (Exh. M at 3.) This description, however, could refer to any one of six different products listed on Infineon's website under "Stationary – MOPLL & Silicon Tuner." Bender's infringement contentions also imply that Bender may attempt to accuse an indeterminate number of Infineon products, as the contentions accuse "all versions of all of Defendant's products made, used, offered for sale, or sold in, or imported into, the United States since May 14, 2003, which contain either one or more voltage or voltage feedback analog amplifiers built without using a differential pair, or one or more current feedback amplifiers which use more than one set of dual opposing current mirrors, such as products which contain a DAC, ADC, PLL, or otherwise perform tasks for which such high speed analog amplifiers are used." (Exh. K at 3.) By violating Patent L.R. 3-1(b), Bender has left Infineon without the fundamental information of exactly what products are at issue and how each of them is accused of infringing the '188 Patent.

### B. Infineon Will Be Prejudiced if Bender Is Not Compelled to Provide Adequate Infringement Contentions

If the Court does not compel more specific infringement contentions, Infineon will be severely and unduly prejudiced. Even with Bender's amended claim charts, Infineon is completely in the dark with respect to how each element is allegedly practiced by the accused Infineon products. By requiring Bender to specifically map the claim elements to the accused Infineon products and to specifically locate the accused structures and components within the

accused devices, the Patent Local Rules (1) ensure that Bender commits to his infringement theory and (2) allow Infineon to properly prepare its defense, including the submission of invalidity contentions and claim constructions. *See Connectel*, 391 F. Supp. 2d at 527; *Intertrust*, 2003 U.S. Dist. LEXIS 22736, at *6. Furthermore, Infineon should not have to undertake the very costly burden of providing discovery for the more than 600 Infineon products currently accused unless and until Bender fulfills his obligations under Rule 3-1. The hundreds of accused Infineon products involve many different technologies and applications. Furthermore, providing discovery in response to Bender's shotgun approach to accusing Infineon products would implicate scores of document custodians in numerous locations around the world. The Patent Local Rules require Infineon to produce confidential technical documents only after Bender has adequately disclosed his infringement theories and provided infringement contentions that comply with Patent L.R. 3-1. Bender has not done so, and until he does, it would be manifestly unjust to impose on Infineon the extraordinary burden of providing such discovery. *See Twombly*, 550 U.S. at 558 ("[a] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.") (citations omitted). There has been no indication from Bender's actions thus far – including his amended claim charts – that Infineon can expect to receive infringement contentions that comply with Patent Local Rule 3-1, and Infineon cannot allow itself to incur unnecessary and extraordinary expense defending against Bender's vague contentions and shotgun approach to this litigation.

### C. Bender Cannot Show the Good Cause Necessary to Amend His Infringement Contentions

Patent L.R. 3-6 allows a party to amend its infringement contentions only on a showing of "good cause." *See* Patent L.R. 3-6. At least by October 29, 2009, when the Court issued an order compelling Bender to amend the preliminary infringement contentions that he served on Intersil, Bender was on notice that infringement contentions of the type served in this case do not comply with Rule 3-1. (*See* Exh. C; *see also* Exh. B (granting in part IBM's motion to compel infringement contentions on November 13, 2009).) Accordingly, on December 28, 2009, Bender served deficient infringement contentions on Infineon with full knowledge that the contentions

1  did not comply with Rule 3-1. Bender's amended claim charts are no better. Bender cannot

2  establish good cause to further amend, and therefore it is appropriate to strike Bender's

3  infringement contentions for failing to comply with the Patent Local Rules.

4  **IV.** **CONCLUSION**

5  For the foregoing reasons, Infineon respectfully requests that the Court:

6  (1) strike Bender's infringement contentions; OR

7  (2) compel Bender to (a) serve claim charts specifically identifying where within each of

8  the accused Infineon products the claimed electrical circuit is allegedly located, *i.e.*, which circuit

9  components within each accused product allegedly correspond to the limitations of the asserted

10 claims and how those circuit components are interconnected to form the claimed combination;

11 and (b) provide representative claim charts for every product accused of infringement that

12 functions differently or is designed differently than Bender's five "representative" products or

13 demonstrate that the five "representative" products are in fact accurate representations of the

14 other 600-plus accused Infineon products.

Respectfully submitted,

Dated: February 9, 2010        By: /s/ Daniel R. Foster
                               Daniel R. Foster
                               Christopher D. Bright
                               MCDERMOTT WILL & EMERY LLP
                               18191 Von Karman Avenue, Suite 500
                               Irvine, CA 92612-7108
                               Telephone: (949) 851-0633
                               Facsimile: (949) 851-9348
                               Email: dfoster@mwe.com
                               Email: cbright@mwe.com

                               Attorneys for Defendant and Counterlcaimant
                               INFINEON TECHNOLOGIES NORTH AMERICA
                               CORP.

# CERTIFICATE OF SERVICE

I am over the age of eighteen years and not a party to the within-entitled action. My business address is 18191 Von Karman Avenue, Suite 500, Irvine, CA 92612. I served a copy of the following document(s) as follows:

**INFINEON TECHNOLOGIES NORTH AMERICA CORP.'S NOTICE OF MOTION AND MOTION TO STRIKE BENDER'S INFRINGEMENT CONTENTIONS OR TO COMPEL INFRINGEMENT CONTENTIONS THAT COMPLY WITH PATENT L.R. 3-1**

☒ I electronically filed the with the Clerk of the Court using the CM/ECF system

☐ By transmitting via electronic mail the document(s) listed above to the email addresses set forth below on this date

☐ By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Menlo Park, California addressed as set forth below.

☐ By Personal Service: I served a true copy to each person[s] named at the address[es] shown.

☐ By Federal Express: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to Federal Express with a fully completed air bill, under which all delivery charges are paid by McDermott Will & Emery LLP, that same day in the ordinary course of business.

Executed on February 9, 2010, at Irvine, California.

/s/ Terri Carman
TERRI CARMAN

ORC 475577-3.072750.0035

INFINEON'S MOTION TO STRIKE OR TO COMPEL INFRINGEMENT CONTENTIONS    -1-    CASE NO. C09 02112 JW