Daniel R. Foster (SBN 179753)
dfoster@mwe.com
Christopher D. Bright (SBN 206273)
cbright@mwe.com
MCDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Telephone: (949) 851-0633
Facsimile: (949) 851-9348

Attorneys for Defendant and Counterclaimant
INFINEON TECHNOLOGIES NORTH
AMERICA CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGORY BENDER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INFINEON TECHNOLOGIES NORTH AMERICA CORP., a Delaware corporation, et al.,<br><br>　　　　　Defendant and Counterclaimant. | Case No. C 09-02112 JW<br><br>**INFINEON TECHNOLOGIES NORTH AMERICA CORP.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE BENDER'S INFRINGEMENT CONTENTIONS OR TO COMPEL INFRINGEMENT CONTENTIONS THAT COMPLY WITH PATENT L.R. 3-1**<br><br>**DISCOVERY MATTER**<br><br>Date:　　Tuesday, March 16, 2010<br>Time:　　10:00 a.m.<br>Courtroom: 2, 5th Floor<br>Judge:　　Hon. Howard R. Lloyd |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Bender's Infringement Contentions Are Deficient Because They Fail to Specifically Identify Where Within Various Amplifiers Each Claimed Amplifier Component Is Allegedly Found ...........................................................2

        1. Bender's Infringement Contentions Fail to Identify Where Claim Elements Are Allegedly Found in Infineon's Amplifiers............................2

        2. There Is No Excuse for Bender's Failure to Provide Infringement Contentions that Have the Necessary Level of Detail ................................7

    B. The Court Should Strike Bender's Infringement Contentions in Their Entirety ..................................................................................................................10

        1. This Court Has the Authority to Strike Bender's Infringement Contentions ...........................................................................................10

        2. Bender Has Not, and Cannot, Show Good Cause for Amending His Infringement Contentions ......................................................................10

            a. The Information Necessary to Provide Detailed Infringement Contentions Is, and Has Been, Publicly Available ………………….. 11

            b. Bender Tries to Turn the Parties' Obligations on their Heads ………. 13

III. CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*American Video Graphics, L.P. v. Electronic Arts, Inc.*,
    359 F. Supp. 2d 558 (E.D. Tex. 2005) ..................................................................................7

*Bender v. Advanced Micro Devices, Inc.*,
    2010 U.S. Dist. LEXIS 11539 (N.D. Cal. Feb. 1, 2010) ....................................1, 5, 11, 12

*Bender v. Micrel, Inc.*,
    2010 WL 520513 (N.D. Cal. Feb. 6, 2010) .........................................................1, 11, 12, 13

*Garmin Ltd. v. TomTom, Inc.*,
    2007 U.S. Dist. LEXIS 74032 (E.D. Tex. Oct. 3, 2007) ....................................................11

*Link v. Wabash R.R. Co.*,
    370 U.S. 626, 630-31 (1962) ..............................................................................................10

*Finisar Corp. v. DirecTV Group, Inc.*,
    424 F. Supp. 2d 896 (E.D. Tex. 2006) .................................................................................3

*FusionArc, Inc. v. Solidus Networks, Inc.*,
    2007 U.S. Dist. LEXIS 28970 (N.D. Cal. Apr. 5, 2007) ................................................8, 10

*Intertrust Techs. Corp. v. Microsoft Corp.*,
    2003 U.S. Dist. LEXIS 22736 (N.D. Cal. Nov. 26, 2003) ...............................................3, 9

*Kearns v. Comba*,
    252 Fed. Appx. 141 (9th Cir. 2007) ...................................................................................10

*Linex Techs. Inc. v. Belkin Int'l, Inc.*,
    628 F. Supp. 2d 703 (E.D. Tex. 2008) ........................................................................3, 4, 7

*Network Caching Tech., LLC v. Novell, Inc.*,
    2003 U.S. Dist. LEXIS 9881 (N.D. Cal. Mar. 21, 2003) .....................................................8

*STMicroelectronics, Inc. v. Motorola, Inc.*,
    308 F. Supp. 2d 754 (E.D. Tex. 2004) .............................................................................4, 8

*Townshend Intellectual Prop., L.L.C. v. Broadcom Corp.*,
    2007 U.S. Dist. LEXIS 51792 (N.D. Cal. July 5, 2007) ....................................................11

*View Eng'g, Inc, v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ............................................................................................12

## PATENT LOCAL RULES

Rule 3-1 .............................................................................................1, 2, 5, 8, 9, 11, 12, 13
Rule 3-6 ..................................................................................................................10, 11

## I. INTRODUCTION

Bender served infringement contentions, claim charts, and amended claim charts against Infineon that lack the requisite level of specificity required by Patent L.R. 3-1. The asserted patent claims are directed to components of an amplifier. Bender's contentions refer generally to amplifiers in Infineon's integrated circuits, but the contentions do not identify the location of each asserted claim element in any Infineon amplifier. Failing to identify the location of each asserted claim element, Bender has not "identif[ied] specifically where each limitation of each asserted claim is found" pursuant to Rule 3-1(c). Bender's contentions amount to this: Bender alleges that Infineon's integrated circuits have amplifiers, but Bender leaves it up to Infineon to figure out why those amplifiers allegedly infringe.

Bender has not cited any case, nor is Infineon aware of any case, in which infringement contentions such as Bender's, which state that the claim elements are "in the [accused] product," comply with Rule 3-1. Indeed, other courts in this District have rejected similar contentions by Bender in cases involving the same patent-in-suit. *See, e.g., Bender v. Advanced Micro Devices, Inc.*, 2010 U.S. Dist. LEXIS 11539, at *4 (N.D. Cal. Feb. 1. 2010) ("[T]he infringement contentions are generally defective because the given locations are impermissibly broad and vague in description. . . . Mr. Bender fails to properly map and link the claim language to each accused product; instead, the locations are repeated for each element of every claim, even where inappropriate."); *Bender v. Micrel, Inc*., 2010 WL 520513, at *3 (N.D. Cal. Feb. 6, 2010).

Bender misapplies cases involving software and source code to argue that detailed contentions are not necessary until he receives confidential schematics of Infineon's accused products. The cases Bender relies upon are limited to the unique circumstances surrounding claims directed to source code functionality because in such cases the plaintiff cannot purchase and analyze the accused instrumentalities. This is not such a case. Infineon's released products are publicly available, and the asserted claim elements are directed to physical components, not source code. Bender's apparent lack of diligence in analyzing Infineon's products cannot be a free ticket for him to provide contentions that fail to identify specifically where each asserted claim element is found. Indeed, Bender's apparent position that Infineon should produce its

1   confidential schematics before it receives compliant infringement contentions turns the structure
2   and process of the Patent Local Rules on their head.  Not to mention, it would impose a
3   monstrous burden on Infineon to produce technical documents related to over 600 accused
4   Infineon products without any indication that those products include what Bender believes to be
5   the asserted claim elements.

6   The appropriate response to Bender's failure to comply with Rule 3-1 in this case is to
7   strike his infringement contentions in their entirety.  Bender has not, and cannot, show good cause
8   pursuant to Patent L.R. 3-6 to amend his infringement contentions.  Claiming that he will amend
9   his contentions if he receives confidential schematics of the accused Infineon products is not good
10  cause because there is publicly available information – the products themselves – that provide all
11  of the information Bender claims to need.

12  Bender has been warned time and time again by several different judges that his
13  contentions are deficient, but he has not exercised even a modicum of diligence in obtaining the
14  information necessary to provide sufficient contentions.  Bender's failure to spend the appropriate
15  time and effort to comply with his obligations unfairly and dramatically increases the burden on
16  Infineon and its engineers, and the expense of preparing its defense in this case.  This Court
17  should strike Bender's infringement contentions and amended claim charts in their entirety.  At a
18  minimum, the Court should require Bender to further amend his infringement contentions to
19  include information that identifies what components (*e.g.*, transistors, resistors) within specific
20  amplifiers in Infineon's products he claims constitute each element (*e.g.*, input buffers, current
21  mirrors, feedback means) of the asserted claims and defer any required disclosures from Infineon
22  until this has been done.

## II.     ARGUMENT

### A.     Bender's Infringement Contentions Are Deficient Because They Fail to Specifically Identify Where Within Various Amplifiers Each Claimed Amplifier Component Is Allegedly Found

#### 1.     Bender's Infringement Contentions Fail to Identify Where Claim Elements Are Allegedly Found in Infineon's Amplifiers

Bender's infringement contentions, original claim charts, and amended claim charts fail to

1  "identify[] specifically where each element of each asserted claim is found" because the
2  contentions do not identify where the asserted claim elements are allegedly found in Infineon's
3  amplifiers. *See* Patent L.R. 3-1(c). Infringement contentions should be as detailed as the claim
4  elements and technology asserted. *See Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703,
5  711 (E.D. Tex. 2008) ("An additional reason that Plaintiff's Infringement Contentions are
6  insufficient is that the technology and system claim structure at issue are complex. . . . As a result
7  of this complexity, more thorough Infringement Contentions will ensure that Defendants will
8  better understand Plaintiff's claims."). A mismatch between the level of detail in the claim
9  language and the level of detail in the infringement contentions defeats the entire purpose of the
10 Patent Local Rules, which is to force plaintiffs to "crystallize their theories of the case early in the
11 litigation and to adhere to those theories once they have been disclosed." *See Intertrust Techs.*
12 *Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 22736, at *4 (N.D. Cal. Nov. 26, 2003); *see*
13 *also Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) (noting
14 that goals of Patent Local Rules include providing adequate notice and information to all parties).

15       There are at least two levels of abstraction at issue here. At the first level of abstraction,
16 there are several functional blocks (*e.g.*, converters, receivers, transmitters), some of which may
17 contain amplifiers, on an integrated circuit within the accused Infineon products. At the second,
18 more detailed level of abstraction, there are specific components (*e.g.*, transistors, resistors)
19 within an amplifier. The elements of Bender's asserted claims are directed at the second, more
20 detailed level of abstraction. For example, the claim elements include among other things a "load
21 resistor" and "input buffers" (which are themselves comprised of individual components such as
22 transistors). (*See* Foster Decl., Exh. J at 16:34-64, 20:39-21:13.)[1] The asserted claim elements
23 are not directed at the first, broader level of abstraction because the individual elements are
24 directed at components *within* an amplifier, not just the existence of an amplifier within an
25 integrated circuit. But the latter is exactly what Bender's claim charts show – "locations" of
26 amplifiers in an integrated circuit, not "locations" of components (*i.e.*, the claimed elements)

---

[1] As used in this Reply, "Foster Decl." refers to the Declaration of Daniel R. Foster In Support Of Infineon Technologies North America Corp.'s Motion to Strike Bender's Infringement Contentions or Compel Infringement Contentions that Comply with Patent L.R. 3-1, which is Docket No. 26-1 in this case.

INFINEON'S REPLY ISO MOTION TO STRIKE      - 3 -                    CASE NO. C09 02112 JW
INFRINGEMENT CONTENTIONS

1 within amplifiers.

2 Bender's contentions are meaningless because he simply makes the circular point that
3 elements of an analog amplifier are located in analog amplifiers in a product. (Dkt. 35 at 11:11-
4 13 ("Each element is found on the analog amplifier integrated circuits contained in the
5 products."); *see also* Foster Decl., Exh. L (stating that each element is in one or more of several
6 amplifiers, input lines, or other functional blocks "in the integrated circuit contained in the
7 product.").) It is hard to imagine how elements of an analog amplifier could be located anywhere
8 other than in an analog amplifier.

9 Bender's attempt to compare his contentions to contentions that were found compliant in a
10 different case, involving different parties and a different patent, is not persuasive. Bender asserts
11 that his charts "go far beyond others that have been adequate in similar circumstances" and gives
12 the example of the claim charts used in the case of *STMicroelectronics Inc. v. Motorola, Inc.*
13 (Dkt. 35 at 9:2-7.) The claim charts from the *STMicroelectronics* case, however, contain far more
14 detail than Bender's charts for at least two reasons. First, the STMicroelectronics chart identifies
15 different structures as corresponding to different claim elements. (*See* Dkt. 35-1.) Bender's
16 claim charts against Infineon do not. Second, the STMicroelectronics chart identifies the
17 functional effects of those different structures. (*See id.*) Again, Bender's claim charts against
18 Infineon do not.

19 Because Bender's infringement contentions fail to identify any structure within the
20 accused Infineon products that corresponds to any asserted claim element, they are insufficient.
21 *See Linex Techs. Inc.*, 628 F. Supp. 2d at 711 ("Like *Connectel*, Plaintiff Linex has failed to
22 identify any structure, process, system, or apparatus within the Accused Products that corresponds
23 to any claim limitation.") (ordering Plaintiff to "particularly point to the portion of the Accused
24 Product which is asserted to perform the function described in each claim limitation"). For
25 example, the first element of claim 8 is "a first input buffer" having specific characteristics.
26 Bender's supposed "mapping" of this element states, "[t]his element is the input buffer circuitry
27 located in [amplifiers in one of sixteen receivers, transmitters, or other functional blocks] which is
28 located in the integrated circuit contained in the product." (*See* Dkt. 35 at 11:6-11; Foster Decl.,

INFINEON'S REPLY ISO MOTION TO STRIKE - 4 - CASE NO. C09 02112 JW
INFRINGEMENT CONTENTIONS

Exh. L at 2-4.) Stating that the claimed "input buffer" is "the input buffer circuitry" is meaningless without identifying specifically what Bender claims is "the input buffer circuitry."

Contrary to Bender's assertion, merely repeating a broad location for each element of a claim does not comply with Rule 3-1(c). As pointed out by another judge dealing with Bender's deficient contentions, "Mr. Bender fails to properly map and link the claim language to each accused product; instead, the locations are repeated for each element of every claim, even where inappropriate." *Advanced Micro Devices*, 2010 U.S. Dist. LEXIS 11539, at *4. As shown in the excerpted claim chart below, Bender's defective claim charts in *AMD* are very similar to his defective claim charts against Infineon.

| U.S. Patent No. 5,103,188 (Foster Decl., Exh. J.) | Bender's AMD Claim Chart (Foster Reply Decl., Exh. 1.)[2] | Bender's Infineon Claim Chart (Foster Reply Decl., Exh. 2.) | Bender's Amended Infineon Claim Chart (Foster Decl., Exh. L.) |
|---|---|---|---|
| 35. An electrical circuit for amplifying the difference between complex, high speed signals having differential outputs and constructed with solid state devices, comprising: | This amplifier is more commonly known as a differential or a "voltage feedback amplifier." More generally, it is called an "Op Amp." | This amplifier is more commonly known as a differential or a "voltage feedback amplifier." More generally, it is called an "Op Amp." | This amplifier is more commonly known as a differential or a "voltage feedback amplifier." More generally, it is called an "Op Amp." |
| a first and second input buffer, each having a single non-inverting high impedance input, an open loop voltage gain not | There are many instances of this element contained in AMD processors, including but not limited to the following locations: | On information and belief, there are numerous instances of this element contained in the accused instrumentalities. Such locations include, but are not limited to the following: | On information and belief, there are numerous instances of this element contained in the accused instrumentalities. Such locations include, but are not limited to the following: |

---

[2] As used in this Reply, "Foster Reply Decl." refers to the Declaration of Daniel R. Foster In Support Of Infineon Technologies North America Corp.'s Reply In Support Of Its Motion to Strike Bender's Infringement Contentions or Compel Infringement Contentions that Comply with Patent L.R. 3-1, filed concurrently with this Reply.

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS - 5 - CASE NO. C09 02112 JW

| exceeding unity, and a low impedance output; | | | |
|---|---|---|---|
| | 1. This element is located in the amplifier which is contained in the Red Video DAC output signal path. The Red Video DAC is contained in the video display circuitry, which is located on the integrated circuit contained in the AMD Geode Processor. | 1. This element is located in the 2100 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product. | 1. This element is the first and second input buffers located in the 2100 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product. |
| | 2. This element is located in the amplifier which is contained in the Green Video DAC. The Green Video DAC is contained in the video display circuitry, which is located on an integrated circuit contained in the AMD Geode Processor. | 2. This element is located in the 1800/1900 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product. | 2. This element is the first and second input buffers located in the 1800/1900 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product. |
| | 3. This element is located in the amplifier which is contained in the Blue Video DAC. The Blue Video DAC is contained in the video display circuitry, which is located on an integrated circuit contained in the AMD Geode Processor. | 3. This element is located in the 800/850 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product. | 3. This element is the first and second input buffers located in the 800/850 MHz receiver input amplifier located in the receiver circuitry which is located in the integrated circuit contained in the product. |
| | . . . [locations 4-12 excluded for purposes of space] | . . . [locations 4-16 excluded for purposes of space] | . . . [locations 4-16 excluded for purposes of space] |

In short, Bender's contentions, here and in other cases, simply are not focused at the proper level of detail.

### 2. There Is No Excuse for Bender's Failure to Provide Infringement Contentions that Have the Necessary Level of Detail

Indeed, Bender recognizes that broad "location" contentions are inappropriate and that schematic-level claim charts are appropriate in this case. For example, Bender stated in his Opposition that once he has schematic-level information, he will provide an infringement analysis corresponding to that information. (*See* Dkt. 35 at 15:8-12.) Although irrelevant to this case and Infineon's motion, Bender attached as an exhibit to his Opposition a claim chart he served on Intersil. (*See* Dkt. 35 at 15:11-12, Exh. D.) Presumably, Bender holds out his claim chart against Intersil as having the appropriate level of detail. Bender then implicitly admits that his claim charts against Infineon are inferior and inadequate, stating that once he has schematic-level information, "Infineon analyses will be similar." (*See* Dkt. 35 at 15:12.) But the details that Bender claims to be "not available" and in the sole possession of Infineon are in fact at Bender's fingertips – Infineon's released products are available to anyone on the open market. All Bender has to do is buy the product, and all of the details he claims are "not available" would be in his hands.

Contrary to Bender's assertions, case law does not provide an excuse for failing to provide adequate detail in his claim charts. For example, Bender's reliance on *American Video Graphics, L.P. v. Electronic Arts, Inc.* is misplaced because it was a software case, and "***[s]oftware cases present unique challenges*** for the parties and the courts" because software cases are based on source code, which cannot be reverse engineered, in contrast to "non-software patent cases, [where] plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit." 359 F. Supp. 2d 558, 560-61 (E.D. Tex. 2005). Further, the *American Video Graphics* court only found the contentions in that case sufficient after noting that the plaintiff, unlike Bender, extensively analyzed the actual accused products before serving its infringement contentions. *See id.* at 559-60. Other courts have also identified the uniqueness of software cases and have indicated that where the asserted claims are directed towards components in a physical product, physical inspection of the accused products is appropriate. *See Linex Technologies*, 628 F. Supp. 2d at 711-12 ("While reverse engineering is

INFINEON'S REPLY ISO MOTION TO STRIKE
INFRINGEMENT CONTENTIONS
- 7 -
CASE NO. C09 02112 JW

1   not synonymous with whether a plaintiff has complied with Patent Rule 3-1, <u>the completion of
2   this task would evidence Plaintiff's diligence in preparing the Infringement Contentions</u> now at
3   issue.  Further, <u>such evidence would buttress Plaintiff's claim that it was impossible to provide
4   further detail in the Infringement Contentions based on publicly available information</u>.") (internal
5   quotations and citations omitted) (emphasis added).  As here, where the case does not involve
6   software or source code, there is no reason that Bender cannot physically inspect at least
7   "representative" accused products and provide detailed claim charts for those "representative"
8   products.

9       Bender misinterprets several cases in an effort to avoid having to analyze Infineon's
10  products.  For example, Bender asserts that Judge Seeborg has "disagreed that reverse
11  engineering was required" in Bender's case against IBM.  The context, however, shows that
12  Judge Seeborg was not yet ready to rule on whether reverse engineering would ultimately be
13  required, stating that "what I see now [in Bender's infringement contentions] isn't enough, you've
14  got to try again and I'll take a look at it then and see . . . ."  (Foster Reply Decl., Exh. 3 at 9:15-
15  16.)[3]  This is hardly a "disagree[ment] that reverse engineering was required"; it leaves open the
16  possibility that reverse engineering will indeed be required in the future.[4]  The other cases cited
17  by Bender simply recognize that where the elements of a patent can be located without reverse
18  engineering, it is not required, not that reverse engineering is inappropriate or unnecessary.  *See
19  FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 U.S. Dist. LEXIS 29870, at *3-4 (N.D. Cal. Apr.
20  5, 2007) (finding reverse engineering not required where patentee identified how claim elements
21  were practiced given level of detail required by claims); *Network Caching Tech., LLC v. Novell,
22  Inc.*, 2003 U.S. Dist. LEXIS 9881, at *12 (N.D. Cal. Mar. 21, 2003) (finding patentee's revised
23  contentions complied with Patent L.R. 3-1 based on a fact-specific inquiry into what claims

---

[3] The November 13, 2009 hearing in Northern District of California Case No. 09-cv-01249-RMW, *Bender v. International Business Machines Corp.*, was not transcribed by a court reporter. Counsel for IBM obtained an audio recording of the hearing from the Court and prepared a rough transcription of the recording.  Counsel for IBM filed the transcription as Exhibit A to the Declaration of Cora L. Schmid, which was filed as Docket No. 54 in Northern District of California Case No. 09-cv-01249-RMW, *Bender v. International Business Machines Corp*.

[4] Since the November 13, 2009 hearing on IBM's motion to compel, IBM has filed a motion to strike Bender's amended infringement contentions.  IBM's motion to strike is set for hearing on March 9, 2010.

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS      - 8 -      CASE NO. C09 02112 JW

1 required and what detail patentee provided in its revised contentions); *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004) (finding under specific statements made in contentions and other facts that additional analysis, such as reverse engineering, was unnecessary to comply with Rule 3-1(c)).

Blazing trails into uncharted territory, Bender attempts to create an exception to the Local Patent Rules that would relieve the plaintiff from identifying specifically where each claim element is found in any case where a defendant could allegedly figure out where the claim elements exist in their own products. (*See* Dkt. 35 at 9:15-21.) Bender cites no authority that has recognized such an exception. In fact, such an exception would contradict and reverse the sequence of events contemplated by the rules. *See Intertrust Techs. Corp.*, 2003 U.S. Dist. LEXIS 22736, at *4 (stating that Patent Local Rules require a plaintiff to "crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."). Lacking any authority for his argument, Bender submitted the declaration of Dr. Kenneth D. Pedrotti to argue that an Infineon engineer should be able to locate the asserted claim elements. Remarkably, Bender has not had his own expert – Dr. Pedrotti – analyze the accused products, but rather uses Dr. Pedrotti's declaration to argue that Infineon's engineers should do Dr. Pedrotti's analysis for him. This is but one example of Bender trying, without authority, to turn the parties' obligations on their heads.

There are numerous concerns raised by Dr. Pedrotti's declaration, including the lack of any basis for his apparent expert opinion that "the claim charts identify with fair precision the location of such analog amplifiers." (*See* Dkt. 35-2 at 3:19-22.)[5] Whether the claim charts are sufficiently precise is a question of law for this Court, not a factual statement to be included in a declaration. Likewise, Dr. Pedrotti's mere "belie[f]" that any Infineon engineer should be able to understand the elements recited in the asserted claims and allegedly present in the accused Infineon products is irrelevant to the question of law before this Court. (*See id.* at 4:6-15.) No matter how Bender spins the issues, the conclusion is the same – his infringement contentions do

---

[5] Counsel for Infineon and Bender are scheduling a date for Infineon to take the deposition of Dr. Pedrotti. Infineon may seek to supplement the record on this motion after taking Dr. Pedrotti's deposition.

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS - 9 - CASE NO. C09 02112 JW

not comply with Rule 3-1.

### B. The Court Should Strike Bender's Infringement Contentions in Their Entirety

#### 1. This Court Has the Authority to Strike Bender's Infringement Contentions

This Court can, and should, strike Bender's contentions in their entirety. The Supreme Court has recognized that courts have broad "inherent power . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). The Ninth Circuit has also recognized, in a non-precedential opinion, that a district court has the inherent authority to enforce its local rules. *See Kearns v. Comba*, 252 Fed. Appx. 141, 141 (9th Cir. 2007) (stating that district court "properly exercised its authority to enforce its local rules"). This Court, therefore, has the inherent authority to enforce Patent L.R. 3-1 and strike Bender's infringement contentions.

The authority that Bender cites in support of his argument that this Court should not strike his infringement contentions is not controlling on this point. The court in *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 U.S. Dist. LEXIS 28970, at *2 (N.D. Cal. Apr. 5, 2007) noted that precedent recognized that motions to strike have been treated as motions to compel. But *FusionArc* does not state that all motions to strike should be ignored and treated as motions to compel amended infringement contentions.

#### 2. Bender Has Not, and Cannot, Show Good Cause for Amending His Infringement Contentions

Patent Local Rule 3-6 dictates that a plaintiff can only amend infringement contentions "by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6. Rule 3-6 sets forth three situations supporting a finding of good cause – (1) a claim construction different from that proposed by the plaintiff, (2) recent discovery of material prior art, and (3) "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." *See* Patent L.R. 3-6.

None of the three situations set forth in Rule 3-6 is present in this case. There has not been a claim construction in this case. There has not been recent discovery of material prior art.

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS - 10 - CASE NO. C09 02112 JW

1 There has not been discovery of nonpublic information.

2 Moreover, courts have already warned Bender on *two separate occasions* that comparable infringement contentions are deficient and may be struck. In granting Micrel's motion to compel infringement contentions that comply with Rule 3-1, Judge Illston specifically admonished Bender that "[g]iven . . . prior rulings, [Bender] has now been put on repeated notice that the initial infringement contentions filed with defendant were deficient." *Micrel*, 2010 WL 520513, at *3. Similarly, in granting AMD's motion to compel, Judge Chen stated that "Mr. Bender is forewarned, however, that he may not be given further opportunities to amend - *i.e.*, at a certain point, if the contentions continue to be insufficient, they may be stricken." *Advanced Micro Devices*, 2010 U.S. Dist. LEXIS 11539, at *5. While Bender has served infringement contentions upon at least 14 of the 37 defendants, to date not a single case has progressed to the invalidity contention stage. Instead, at least ten defendants have filed motions challenging Bender's contentions. Of the other four defendants that have received infringement contentions, one is in the process of challenging Bender's contentions, one has settled, and as reported by counsel for Trident Microsystems, Inc. at a case management conference before Judge Whyte on February 26, 2010, two other defendants are in the process of settling.[6]

a. <u>The Information Necessary to Provide Detailed Infringement Contentions Is, and Has Been, Publicly Available</u>

Bender cannot show good cause necessary to amend his infringement contentions based on the discovery of nonpublic information. Bender claims that once he has schematic-level information, he "will be able, for good cause, to amend his infringement contentions and claim charts if and as appropriate." (*See* Dkt. 35 at 9:11-14.) Rule 3-6, however, does "not contemplate pre-planned, wholesale revisions" to infringement contentions. *Townshend Intellectual Prop.,*

---

[6] In addition, other defendants have filed motions to dismiss challenging the sufficiency of Bender's infringement allegations in his complaint. On February 26, 2010, Judge Armstrong dismissed without prejudice Bender's Amended Complaint against Motorola, Inc. for failure to state a claim because "the Amended Complaint is too conclusory to provide 'fair notice' of the basis of Plaintiff's claim that Defendant infringed the '188 Patent." (*See* Foster Reply Decl., Exh. 4 at 4.) Judge Armstrong allowed Bender only five days to file a Second Amended Complaint. (*See id.* at 6.) Also on February 26, 2010, Judge Fogel indicated at a hearing on motions to dismiss in *Bender v. LG Electronics U.S.A., Inc.*, Case No. 5:09-cv-02114, that Bender's Amended Complaint in that case is insufficient.

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS - 11 - CASE NO. C09 02112 JW

1 *L.L.C. v. Broadcom Corp.*, 2007 U.S. Dist. LEXIS 51792, at *8 (N.D. Cal. July 5, 2007). The
2 schematic-level information he claims is necessary to provide more detailed claim charts is, and
3 has been, available to anyone who buys an Infineon product. Each product itself contains the
4 schematic-level information Bender claims he needs. There is nothing in the asserted claims or
5 products that Bender could not learn by purchasing the products, and therefore, there is no good
6 cause for Bender to amend his contentions. *Cf. Garmin Ltd. v. TomTom, Inc.*, 2007 U.S. Dist.
7 LEXIS 74032, at *19-21 (E.D. Tex. Oct. 3, 2007) (denying motion to supplement infringement
8 contentions for claims not mentioning source code because plaintiff could learn necessary
9 information for non-source code claims by purchasing accused products).

10 Even though Infineon's released products are publicly available, Bender has not exercised
11 "diligent efforts" to obtain even a single accused Infineon product. Indeed, Bender admits that he
12 has not purchased any accused Infineon product, and there is no indication that he has attempted
13 to purchase any accused Infineon product. (*See* Dkt. 35 at 7:24-8:10.) Any argument that Bender
14 should not have to spend money to purchase accused products is baseless. *See View Eng'g, Inc, v.*
15 *Robotic Vision Sys., Inc.*, 208 F.3d 981, 985 (Fed. Cir. 2000) (affirming imposition of Rule 11
16 sanctions for failure to undertake pre-suit investigation where stated reason for failing to analyze
17 accused device was that accused machine "cost several hundred thousand dollars to purchase"
18 and counsel believed "it did not make any economic sense to purchase a machine just for the
19 purpose of making further investigation"). There is no excuse for not purchasing an accused
20 product, especially because the accused Infineon products are typically inexpensive, single
21 semiconductor chips. Bender has already been warned about the inadequacy of his contentions
22 and his lack of diligence. *See Advanced Micro Devices*, 2010 U.S. Dist. LEXIS 11539, at *5
23 ("Mr. Bender is forewarned, however, that he may not be given further opportunities to amend -
24 *i.e.*, at a certain point, if the contentions continue to be insufficient, they may be stricken.");
25 *Micrel, Inc.*, 2010 WL 520513, at *3 (admonishing Bender that "[g]iven . . . prior rulings,
26 [Bender] has now been put on repeated notice that the initial infringement contentions filed with
27 defendant were deficient."); Foster Decl., Exh. H at 15 (Judge Alsup stating that Bender "should
28 have hired legions of people to go out and reverse engineer these things. And it's his own

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS - 12 - CASE NO. C09 02112 JW

problem if he doesn't know why it's infringement."). Having failed to exercise minimal effort to obtain publicly available Infineon products, Bender cannot show the "good cause" necessary under Patent L.R. 3-6 to amend his infringement contentions.

                b.    <u>Bender Tries to Turn the Parties' Obligations on their Heads</u>

The Patent Local Rules set forth a sequence of events and obligations that the parties must follow. Only after the plaintiff has complied with its Rule 3-1 obligations does Patent L.R. 3-4 require the defendant to produce "schematics" or other documents for the "Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart." *See* Patent L.R. 3-4. Bender cites no authority, and Infineon is not aware of any authority, requiring Infineon to provide Bender confidential schematics of publicly available products so that he can meet *his* threshold obligation of identifying specifically where each and every claim element is found within the accused Infineon products. It is *Bender's obligation* to serve compliant infringement contentions. It is not Infineon's obligation to help Bender satisfy the requirements of Rule 3-1, especially where the accused products are publicly available. As Judge Illston noted, while "[Bender] argues that he cannot be more specific without obtaining defendant's detailed schematics, . . . the Court will not permit plaintiff to proceed at this point in the absence of claim charts containing more substantive infringement contentions." *Micrel*, 2010 WL 520513, at *2.

## III. **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Infineon's Motion, Infineon respectfully requests that the Court grant Infineon's Motion and strike Bender's infringement contentions and amended claim charts in their entirety. At a minimum, Infineon respectfully requests that the Court grant Infineon's Motion and require Bender to further amend his infringement contentions to include information that identifies what components (*e.g.*, transistors, resistors) within specific amplifiers in Infineon's products he claims constitute each element (*e.g.*, input buffers, current mirrors, feedback means) of the asserted claims and defer any required disclosures from Infineon until this has been done.

INFINEON'S REPLY ISO MOTION TO STRIKE INFRINGEMENT CONTENTIONS    - 13 -    CASE NO. C09 02112 JW

Dated: March 2, 2010 Respectfully submitted,

McDERMOTT WILL & EMERY LLP


By: /s/ Daniel R. Foster
    Daniel R. Foster

Attorneys for Defendant and Counterlcaimant
INFINEON TECHNOLOGIES NORTH AMERICA
CORP.

# CERTIFICATE OF SERVICE

I am over the age of eighteen years and not a party to the within-entitled action. My business address is 18191 Von Karman Avenue, Suite 500, Irvine, CA 92612. I served a copy of the following document(s) as follows:

**INFINEON TECHNOLOGIES NORTH AMERICA CORP.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE BENDER'S INFRINGEMENT CONTENTIONS OR TO COMPEL INFRINGEMENT CONTENTIONS THAT COMPLY WITH PATENT L.R. 3-1**

☒ I electronically filed the with the Clerk of the Court using the CM/ECF system

☐ By transmitting via electronic mail the document(s) listed above to the email addresses set forth below on this date

☐ By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Menlo Park, California addressed as set forth below.

☐ By Personal Service: I served a true copy to each person[s] named at the address[es] shown.

☐ By Federal Express: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to Federal Express with a fully completed air bill, under which all delivery charges are paid by McDermott Will & Emery LLP, that same day in the ordinary course of business.

Executed on March 2, 2010 at Irvine, California.

/s/     Terri Carman
TERRI CARMAN

ORC 476635-6.072750.0035